1

2

3

4

5                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF WASHINGTON
6

7   ANTHONY G. ACKERMAN,            )
                                    ) No. CV-06-0069-CI
8          Plaintiff,               )
                                    ) ORDER GRANTING DEFENDANT'S
9   v.                              ) MOTION FOR SUMMARY JUDGMENT
                                    )
10  LINDA S. McMAHON, Commissioner  )
    of Social Security,[1]          )
11                                  )
           Defendant.               )
12                                  )
                                    )
13  _____

14      BEFORE THE COURT are Plaintiff's Motion for Summary Judgment

15  (Ct. Rec. 13) and Defendant's Motion for Summary Judgment (Ct. Rec.

16  19).  Plaintiff filed a reply on November 16, 2006 (Ct. Rec. 21).

17  The court noted the matter for hearing without oral argument on

18  November 30, 2006.  (Ct. Rec. 18.)  Attorney Donald C. Bell

19  represents Plaintiff; Special Assistant United States Attorney

20  Terrye E. Shea represents the Commissioner of Social Security

21  ("Commissioner").  The parties have consented to proceed before a

22  magistrate judge. (Ct. Rec. 10.)  After reviewing the administrative

23  _____

24      [1]As of January 20, 2007, Linda S. McMahon succeeded

25  Commissioner Jo Anne B. Barnhart as acting Commissioner of Social

26  Security.  Pursuant to FRED. R. CIV. P. 25(d)(1), Commissioner Linda

27  S. McMahon should be substituted as Defendant, and this lawsuit

28  proceeds without further action by the parties.  42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 19) and **DENIES** Plaintiff's Motion for Summary Judgment. (Ct. Rec. 13.)

## JURISDICTION

Plaintiff protectively filed applications for Supplemental Security Income and Disability Insurance Benefits ("DIB") on December 20, 2001, alleging an onset date of February 17, 1998. (Tr. 103-105, 609-611.)  The applications were denied initially and on reconsideration. (Tr. 53-55, 56-59, 63-65, 613-616, 618-620.)  ALJ Mary Reed held a hearing on July 28, 2004.  Plaintiff, medical expert William Newman, M.D., vocational expert Tom Moreland, and Plaintiff's sister, Deanna Ackerman, testified.  (Tr. 635-692.) On November 8, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 20-37.)[2]  The Appeals Council denied a request for review on December 2, 2005.  (Tr. 10-13).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 3, 2006.  (Ct. Rec. 1.)

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 37 years old on the date of the ALJ's decision.

---

[2]In her decision, the ALJ noted that Plaintiff filed a prior claim on June 4, 1999, which was denied initially and on reconsideration.  Plaintiff did not seek further appeal.  (Tr. 20.)

(Tr. 21, 655.)  He has an eleventh grade education. (Tr. 21, 655.) Plaintiff has worked as a print shop helper, bindery worker, printer, and welder/fabricator. (Tr. 21.)  When he was an infant, doctors removed a large cavernous hemangioma from Plaintiff's thoracic spine with resultant bilateral rhomboid musculature removal. (Tr. 21-22.) He alleges disability due to spine problems resulting from this surgery and headaches since February 17, 1998. (Tr. 21, 23.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are

denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart*

*v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

293 (9th Cir. 1965).   On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.   If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner.  *Tackett*, 180 F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity during any time at issue.[3]  At step two, the ALJ found that the medical evidence established that Plaintiff suffered from the severe impairments of post blood vessel tumor, removed as a child; degenerative disc disease of the cervical spine;

---

[3]Although Plaintiff has worked sporadically since the date of onset, the ALJ notes that records reflect work at a level less than substantial gainful activity.  (Tr. 21-22.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

post rib fracture; and alcohol/polysubstance abuse. (Tr. 30, 36.) Though Plaintiff's impairments are considered severe, the ALJ concluded that he does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (Tr. 30, 36.)

After finding Plaintiff's testimony regarding his limitations not fully credible, the ALJ concluded that Plaintiff has the RFC to perform a full range of work at the medium exertion level; he is limited in that he cannot work overhead work more than occasionally. (Tr. 35-36.)  At step four the ALJ considered the vocational expert's testimony and concluded that, because Plaintiff has the RFC to perform all of his past work as he previously performed it, he was not disabled within the meaning of the Social Security Act. (Tr. 35-37.) The ALJ found that Plaintiff's episodic polysubstance abuse was not a contributing factor material to his disability. (Tr. 35.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, he argues that the ALJ failed to: (1) properly weigh the medical evidence; (2) properly assess his credibility and that of lay witnesses; (3) adequately develop the record; and (4) include all of his limitations in the hypothetical. (Ct. Rec. 13-2 at 12-19.)

The Commissioner opposes the Plaintiff's Motion and asks that the ALJ's decision be affirmed. (Ct. Rec. 19 at 10.)

**DISCUSSION**

**A.  Weighing Medical Evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

1  evidence consisting of signs, symptoms, and laboratory findings; the

2  claimant's own statement of symptoms alone will not suffice. 20

3  C.F.R. § 416.908. The effects of all symptoms must be evaluated on

4  the basis of a medically determinable impairment which can be shown

5  to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical

6  evidence of an underlying impairment has been shown, medical

7  findings are not required to support the alleged severity of

8  symptoms. *Bunnell v. Sullivan*, 947, F.2d 341, 345 (9th Cr. 1991).

9      A treating or examining physician's opinion is given more

10 weight than that of a non-examining physician. *Benecke v. Barnhart*,

11 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining

12 physician's opinions are not contradicted, they can be rejected only

13 with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821,

14 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion

15 if he states specific, legitimate reasons that are supported by

16 substantial evidence. *See Flaten v. Secretary of Health and Human*

17 *Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995). In addition to medical

18 reports in the record, the analysis and opinion of a non-examining

19 medical expert selected by an ALJ may be helpful to the

20 adjudication. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

21 (*citing Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989).

22 Testimony of a medical expert may serve as substantial evidence when

23 supported by other evidence in the record. *Id.*

24     Plaintiff contends that the ALJ erred by rejecting the opinions

25 of treating physicians David J. Houghland, M.D., and Stuart Freed,

26 M.D., and of D.D.S. physician Morris Fuller, M.D., in favor of the

27 opinion of the testifying medical expert, William Newman, M.D. (Ct.

28 Rec. 13-2 at 12-13.) The Commissioner responds that the ALJ properly

1  weighed the medical evidence.  (Ct. Rec. 19 at 11-14.)

2      The ALJ points out the medical records show that Plaintiff

3  complained of mid back pain on October 11, 1993, more than four

4  years prior to the February 1998 date of onset:

> A lumbosacral spine series revealed possible compression
> fracture of T12 and a sclerotic healing fracture at the
> anterior superior end plate in the lower lumbar area. He
> reported no other back injuries but gives a history of
> lifelong problems with recurrent low back pain that is
> treated with regular chiropractic manipulations. The
> claimant underwent a bone scan that did not show any areas
> of unusual activity in the spine. On October 19, 1993, he
> is reported to be feeling somewhat better but still having
> upper lumbar pain and complains of some left shoulder pain
> with abduction. Physical examination reveals some
> impingement syndrome but otherwise unremarkable. The
> orthopedic surgeon (Dr. Volkmann) released the claimant
> for light duty work and a program for rotator cuff
> strengthening. (Ex. 10F, pp. 1-7.)

13  (Tr. 22, citing Tr. 380-386.)  (Footnote omitted.)

14      Dr. David Houghland first saw Plaintiff on April 28, 1994, when

15  he noted that a lumbar spine x-ray revealed what was probably an old

16  compression fracture of T12 but which was otherwise unremarkable,

17  and bone scans were normal. Plaintiff was taking no medication and

18  said he experienced a migraine headache every week or two. (Tr.

19  387.) Dr. Hougland assessed chronic low back pain and muscle

20  contraction and migraine headaches. (Tr. 388.) He told Plaintiff

21  that he might not be able to be symptom free with respect to his

22  back pain, but recommended a back rehabilitation program. Dr.

23  Houghland noted Plaintiff's posture was poor. (Tr. 388.) About a

24  month later, Plaintiff told Dr. Houghland his back had improved a

25  great deal. (Tr. 389.) Dr. Houghland began Plaintiff on Nadolol for

26  headaches. (Tr. 390-391.) About six weeks later, Plaintiff reported

27  having no severe headaches since his last visit. (Tr. 392.) On July

28  25, 1994, Dr. Houghland reviewed a lumbar MRI showing no obvious

1  structural problems. (Tr. 393.) Dr. Houghland told Plaintiff he

2  needed to work on back mechanics and exercise. (Tr. 393.) On

3  September 1, 1994, neurosurgeon Dr. Mead reviewed Plaintiff's

4  thoracic MRI. The scan was normal. Dr. Mead opined that Plaintiff

5  was suffering from muskuloskeletal overuse due to working 100 hours

6  per week at a printing press. (Tr. 395.)

7      On November 15, 1994, Plaintiff was involved in a motor vehicle

8  accident, given a medical note preventing him from working until

9  November 21, 1994, and referred for four physical therapy sessions.

10 (Tr. 397.) On January 17, 1995, Plaintiff was given an exercise

11 program for stretching the neck and scapula areas. (Tr. 399.) Dr.

12 Houghland began a trial of antidepressants for Plaintiff's

13 headaches, and noted two weeks later that Plaintiff's response to

14 amitriptyline was excellent. (Tr. 402-403.)  Dr. Houghland's last

15 record, October 29, 1996, states that Plaintiff said that his

16 headaches clearly improved when he left employment at the print shop

17 due to fumes. (Tr. 406.) Plaintiff was experiencing one or two

18 migraines a month; Dr. Houghland restarted amitriptyline. (Tr. 406-

19 407.)

20     Plaintiff claims the ALJ also failed to properly credit Dr.

21 Stuart Freed, M.D.'s, opinions.  On June 20, 1997 (before the

22 February 1998 onset date), Plaintiff saw Dr. Freed, who observed

23 that all of Plaintiff's x-rays and MRI's have been unremarkable.

24 (Tr. 408.)  The ALJ notes that after his exam, Dr. Freed opined that

25 Plaintiff's problem was essentially biomechanical because of his

26 surgically removed rhomboid musculature (as an infant) and it was

27 felt that doctors might be able to retract the Plaintiff's scapula

28 using the remaining musculature if they could get it to move.  (Tr.

32, citing Tr. 409.)  The ALJ notes that Dr. Freed placed Plaintiff in a figure of eight clavicle splint and referred him for deep tissue massage and mobilization of both scapulas. Plaintiff was to follow up in three weeks. (Tr. 32, citing Tr. 409.)  The ALJ points out that the Plaintiff did not return until April 13, 1998, ten months later. (Tr. 32, citing Tr. 410-411.) Plaintiff complained of back spasms; he was noted to have been working 10 to 12 hour days; trapezius and paraspinal spasms made it impossible for Plaintiff to hold up his grinder and he had to stop working. (Tr. 32, citing Tr. 410.)  Dr. Freed assessed chronic episodic mid-back spasm and pain primarily related to trying to work with the absence of complete rhomboid musculature and normal scapular motion. (Tr. 32, citing Tr. 410.) Dr. Freed again stressed physical therapy to try to get the scapula to track better and give Plaintiff more muscle balance. (Tr. 32, citing Tr. 410.) The ALJ notes that Plaintiff told Greg Summers, D.C., on March 2, 1998, that he was unable to follow through with Dr. Freed's recommendations because of job demands and personal finances. (Tr. 32, citing Tr. 337-338.)

On December 12, 2001, Plaintiff reported that his symptoms were exacerbated by an ATV accident. (Tr. 32, citing Tr. 415-417.)  Dr. Freed opined that Plaintiff has significant post-traumatic degenerative changes in his thoracic spine and these are likely to always be present. (Tr. 32, citing Tr. 417.) Dr. Freed opined that Plaintiff's spine would make it difficult to continue manual labor; he felt that Plaintiff should look at vocational retraining. The ALJ points out Dr. Freed's comment that Plaintiff seems to have excellent mechanical abilities and skills and with proper education could be very well-suited for that work force. (Tr. 32, citing Tr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

417.)  The ALJ notes that on July 14, 2003, (six months after date last insured), Dr. Freed assessed chronic thoracic and neck pain secondary to muscle dysfunction and loss and post-traumatic changes, and "only recommended that he try Paxil and that he restart some exercises and stretching that he was instructed on in previous visits." (Tr. 32, citing Tr. 509.)  On August 23, 2004, Dr. Freed indicated that the Plaintiff is capable of sitting, standing and walking for a total of 4 hours at one time, up to a total of 8 hours in an 8-hour workday; capable of frequently lifting and carrying up to 20 pounds and occasionally 21 to 50 pounds; limited to occasional twisting of his neck, maintaining a flexed neck position and maintaining a forward bent position. (Tr. 29, citing Tr. 594-595.)

The other opinion Plaintiff contends the ALJ discounted was that of D.D.S. physician Morris Fuller, M.D., Dr. Fuller reviewed the record and on June 3, 2003, assessed an RFC for sedentary work. (Tr. 436-443.) At the hearing, the ALJ referred to this assessment when she told the medical expert that an agency physician opined that Plaintiff would not be able to lift and carry over 10 pounds. (Tr. 647.) Dr. William Newman, M.D., testified, "I don't know why they said that. I have many exhibits here that say he has normal strength and no atrophy." (Tr. 647.)

When she weighed the opinions of Drs. Houghland, Freed and Fuller, the ALJ relied in part on the results of a motor system exam on August 14, 1999, by Saleem Khamisani, M.D. (Tr. 32, citing Tr. 340-343.) (This exam occurred about a year and a half after the date on onset.)  Dr. Khamisani noted Plaintiff had normal bulk and tone in all four extremities. His strength was 5/5 in the upper and lower extremities with no focal atrophy or fasciculations noted. Plaintiff

had no radicular symptoms and no neurological findings on exam.  Dr. Khamisani opined that Plaintiff's combination of migraine and tension headaches are not disabling and should not restrict his work activities. The ALJ observed: "Dr. Khamisani further opined that the claimant has no objective findings and therefore, no work related restrictions are identified." (Tr. 32, citing Tr. 343.)

When evaluating the opinions of the treating doctors, the ALJ considered the medical expert's testimony as well. Dr. Newman agreed that Plaintiff has some restriction of motion in the scapula because of scarring. (Tr. 28, citing Tr. 644.) Dr. Newman pointed out that there is some conflict in the record with respect to Plaintiff's restricted motion, with at least one doctor assessing such a restriction while other exams reveal no weakness or atrophy and "good motor strength and normal reflexes and sensation." (Tr. 29, citing Tr. 644.) Dr. Newman testified that Plaintiff incurred injuries from a motor vehicle accident, including left rib fractures and neck stiffness. (Tr. 29.) X-rays revealed degeneration of C5. An MRI of the dorsal spine was negative, as was an x-ray of the lumbar spine. Dr. Newman testified that all reports indicate essentially normal physical examinations. Plaintiff shows no neurological deficits and, for the most part, his range of motion is normal. (Tr. 29.) Dr. Newman opined that Plaintiff has no real permanent physical impairments, and is capable of medium work with frequent bending up to 2/3 of the day and only occasional overhead work. (Tr. 29.)

The ALJ considered Plaintiff's credibility and found him less than completely credible. (Tr. 31) After considering Plaintiff's credibility, the lay and other medical evidence, the ALJ adopted the RFC articulated by Dr. Newman. (Tr. 35.) The ALJ noted that Dr.

1   Newman is a specialist in orthopedic surgery and had reviewed the
2   entire medical record, whereas Dr. Freed is a family practitioner
3   who saw Plaintiff sporadically. (Tr. 35.) The ALJ pointed out that
4   Dr. Newman's RFC is somewhat consistent with Dr. Freed's. The ALJ
5   also found that because Plaintiff's neck complaints to Dr. Freed
6   were based on less than credible self-reporting, "diminished weight
7   is given to the postural limitations assessed by the treating
8   physician." (Tr. 35.) Credibility determinations bear on the
9   evaluation of medical evidence when an ALJ is presented with
10  conflicting medical opinions. *Webb v. Barnhart*, 433 F.3d 683, 688
11  (9th Cir. 2005).

12      Plaintiff's allegation that the ALJ improperly rejected the
13  opinions of Drs. Houghland, Freed and Fuller in favor of Dr.
14  Newman's is not supported by the record. As noted, the ALJ gave
15  less weight to Dr. Freed's assessed postural limitations because Dr.
16  Freed is a family practitioner who saw Plaintiff sporadically. Dr.
17  Freed indicated he thought that Plaintiff was a good candidate for
18  vocational retraining--not that he was disabled. The ALJ relied on
19  the results of objective testing (MRI's, x-rays, and examination
20  results) and on the medical expert's opinion when weighing the
21  opinions of Plaintiff's treating and consulting physicians. This
22  too was proper.

23      When presented with conflicting medical opinions, the ALJ must
24  determine credibility and resolve the conflict. *Matney v. Sullivan*,
25  981 F.2d 1016, 1019 (9th Cir. 1992). Dr. Freed's assessment of
26  greater limitations is contradicted by examining physician
27  Khamisani, M.D., by the results of objective testing, by Plaintiff's
28  noted failure to follow-up on Dr. Freed's treatment recommendations,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

by Dr. Newman's testimony, and by Plaintiff's ability to work even after the date of onset: "The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity from the alleged onset date. Yet, there are references in the record to work activity." (Tr. 33.)

The ALJ specified some of references to Plaintiff's work activities: metal fabrication (2003); recycling for a college and other customers (2000 and 2001); working 10 to 12 hour days, unspecified employer (April 1998); self-employed since 1998 (first in a steam cleaning business that did not work out, followed by buying a business and making jigs and welding, where Plaintiff worked for one and a half to 2 years); and Exhibit 20E, which describes working 40 hours a week for $8.00 an hour. (Tr. 33.) As the ALJ opined: "The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work." (Tr. 33.)

The ALJ gave specific and legitimate reasons for rejecting the more severe limitations assessed by Plaintiff's treating physician, Dr. Freed. The undersigned finds that the ALJ's weighing of the medical evidence is supported by substantial evidence in the record as a whole and is free of legal error.

**B. Assessing Plaintiff's and Lay Witness Credibility**

<u>Plaintiff's Credibility</u>

Plaintiff contends the ALJ erred by finding him less than completely credible. Specifically, Plaintiff asserts that the ALJ erred by failing to take into consideration and properly evaluate his pain and fatigue, and failed to give "clear and convincing" reasons for rejecting this testimony. (Ct. Rec. 13-2 at 13-16.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

The Commissioner responds that the ALJ's assessment was based on proper legal standards and supported by the record. (Ct. Rec. 19 at 12-16.)

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that Plaintiff's allegations regarding his pain and limitations were less than fully credible. (Tr. 31.) She noted that Plaintiff's testimony that he experiences significant pain and limitation is not supported by the objective medical evidence of record. (Tr. 31.) A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ points out that, in addition, Plaintiff's treatment has been routine and/or conservative in nature. (Tr. 31.) Treating doctors

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

have not placed restrictions on Plaintiff (other than those assessed
by Dr. Freed after the date of last insured).  A neurosurgeon
reported on August 23, 1994, (six months after date of onset) that
Plaintiff moved around quite well, had good strength in his arms and
legs, symmetrical deep tendon reflexes and sensation to prick and
position were normal.  (Tr. 31.)  An MRI scan was normal, and it was
opined that Plaintiff was suffering from musculoskeletal overuse; he
was advised to cut back to working 10-hour days.  (Tr. 31.)  On May
26, 1995, Plaintiff finished physical therapy following a car
accident and reported that his back had improved a great deal.  It
was not recommended that he stop working.  (Tr. 31.)  Plaintiff's
treating physicians have not opined that he is unable to work;
instead, they stress retraining.  (Tr. 32, citing Tr. 417.)

        The ALJ considered the results of a neurological exam on
January 30, 1995, by David Pitkethly, M.D., showing that Plaintiff,
overall, was somewhat improved. He had no radicular pain with neck
movements and had 75 percent of normal range of motion of the neck
in all directions. (Tr. 31.)

        As noted, the ALJ found it significant that Dr. Freed examined
Plaintiff on June 20, 1997, placed him in a clavicle splint,
referred him for deep tissue massage and scapula mobilization, and
directed him to return in three weeks. "The claimant did not return
until April 13, 1998, complaining of back spasms." (Tr. 32.)
Noncompliance with medical care or unexplained or inadequately
explained reasons for failing to seek medical treatment cast doubt
on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530,
426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  The fact
that Plaintiff failed to comply with the medical treatment

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

prescribed by his physician casts doubt on his claim of disabling pain and limitations.

With regard to daily activities, it is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. The ALJ found that Plaintiff's allegations of pain and limitation were inconsistent with the record evidence demonstrating that he was engaged in work at a medium exertion level after his date of onset (although at levels below SGA), and testified that he has been self-employed since 1998. (Tr. 33.)

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

After reviewing the record, the undersigned judicial officer finds that the ALJ provided clear and convincing reasons for finding Plaintiff's allegations not fully credible.

### Lay Witnesses

Plaintiff contends that the ALJ failed to properly credit the testimony of his sister and the written statements by his mother, his then-fiancé, and a massage therapist. (Ct. Rec. 13-2 at 17-18.) The Commissioner responds that the ALJ took into account Plaintiff's conservative treatment, level of work activity after date of onset,

and secondary gain factors when she assessed the lay witnesses' evidence. (Ct. Rec. 19 at 15.)

The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).

The ALJ notes Plaintiff's sister, Deanne Ackerman, "testified that she has observed the claimant's decrease in his cognitive ability, focus and aim and that she has seen him dropping tools." (Tr. 34.) The ALJ points out the evidence contrary to Ms. Ackerman's testimony: after a psychological exam and testing on March 25, 2004, Jeffrey Startzel, Psy.D., found that Plaintiff had no cognitive deficits and is "quite intelligent and should be capable of doing college level work." (Tr. 34, citing Tr. 572.) With respect to dropping things, the ALJ observes that "(t)hroughout the records the claimant is noted to have normal strength and sensation, no neurological deficits or restrictions on the use of the hand and (records) do not show any basis for complaints of dropping things." (Tr. 34.) The ALJ rejected Ms. Ackerman's lay testimony with germane reasons supported by other competent evidence of record.

With respect to the three written statements, the ALJ explicitly rejected them because they are not supported by objective medical evidence with respect to Plaintiff's limitations of sitting, standing and walking. (Tr. 34.) According to Plaintiff's mother, Susan Stinson, "standing in one place for any length of time" is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 19

difficult, and Plaintiff can only walk short distances until it hurts and he needs to sit and rest. (Tr. 194.) The length of time and distance are not estimated. Plaintiff's then fiancé, Sandra Sprague, stated that Plaintiff has "some difficulty moving around when his muscles get tense or very sore." (Tr. 197.) Wendy Stanger, a massage therapist, opined that Plaintiff can walk a 1/4 mile without aid and his movements are not fluid. (Tr. 202.) The ALJ notes:

> [A]s the weight of the evidence fails to document clinical abnormalities that could reasonably be expected to have produced persistent symptoms or work-related limitations consistent with the allegations of claimant's documentary witnesses, it must be considered whether their reports merely constitute a recitation of the claimant's own subjective allegations that have not been accepted as fully credible.

(Tr. 34.) The ALJ is correct that no medical evidence supports the lay witnesses' rather general assertions of limitation. Accordingly, the ALJ did not err with regard to the weight she gave to the lay witnesses' statements and testimony.

## C.  Developing the Record

Plaintiff contends that the ALJ should have developed the record further by eliciting testimony from a neurologist to discuss Plaintiff's migraines and from a psychological expert to discuss his mental impairments; alternatively, Plaintiff contends that the ALJ should have sent him to these professionals for a consultative evaluation. (Ct. Rec. 13-2 at 16-17.) The Commissioner responds that the record does not support finding that Plaintiff's migraines were of a disabling nature. (Ct. Rec. 19 at 15.) With respect to the record of Plaintiff's mental impairments, the Commissioner responds that Jeffrey Startzel, Psy.D., "examined Plaintiff, administered

standard psychological tests, diagnosed mental impairments and assessed functional limitations due to mental impairments," presumably making additional testimony unnecessary. (Ct. Rec. 19 at 14.)

The ALJ's duty to further develop the record is triggered by ambiguous or inadequate evidence in the record. *Mayes v. Massanari*, 276 F. 3d 543, 459-460 (9th Cir. 2001).

The record was adequate to permit the ALJ to properly evaluate the evidence in this case. With respect to Plaintiff's headaches, the ALJ points out Plaintiff's testimony that his last migraine was "over a year ago and he has learned to avoid them." Because Plaintiff has learned to avoid the migraines and takes only over-the-counter medication, the ALJ "finds that it undercuts the purported severity of the headaches." (Tr. 33.) There is no ambiguity or lack of evidence triggering the need for additional testimony or evaluation with respect to Plaintiff's migraines.

Similarly, as the Commissioner correctly observed, Plaintiff underwent a psychological exam and testing with Dr. Startzel. The ALJ considered this assessment:

> The undersigned also finds that the claimant has no mental impairments that would meet the 12 month durational requirement of the Act. In the ADATSA assessment on November 14, 2003, the claimant was noted to be very depressed but, mostly over the loss of his daughter in a custody battle and cheered up by the end of the evaluation. (Ex. 16F.) . . . [An intake form] dated December 10, 2003, note[d] his depression is due to legal problems, dying grandfather, custody loss of daughter and physical problems. By May 25, 2004, the claimant is noted to be feeling more in control of his life. The claimant's psychological assessment was conducted in March 2004 and indicates the claimant has average intelligence quotient, average reading and high average working memory. There is no evidence to support attention deficit/hyperactivity disorder diagnosis. Testing shows no cognitive deficits and the diagnosis appears to be based on subjective

> complaints.  The claimant reported to the psychologist
> that he has two suicide attempts in the last year yet, in
> Exhibit 16F, the claimant denies suicidal thoughts or ever
> attempting suicide.  The medical records also do not
> reflect any suicide attempts.

(Tr. 34.) The ALJ notes that Plaintiff was not being treated with antidepressants. (Tr. 34.) The record was sufficient for the ALJ to make a determination as to Plaintiff's alleged mental impairment.

Accordingly, the ALJ did not err by failing to call additional experts or ordering additional evaluations.

**D.   Hypothetical to Vocational Expert**

Plaintiff contends that the ALJ asked the vocational expert an incomplete hypothetical, in that the question did not include all of Plaintiff's impairments supported by the record. (Ct. Rec. 13-2 at 18-19.) The Commissioner does not specifically address this argument.

Plaintiff's argument with respect to the hypothetical is the same as his first argument: he disagrees with the way the ALJ weighed the medical testimony.  When the ALJ weighed the opinion of Dr. Freed, she properly considered that some of his assessment was based on Plaintiff's inconsistent self-reporting.  The court finds that the ALJ appropriately considered the medical evidence, as well as Plaintiff's credibility in determining his residual functional capacity. With respect to the ALJ's residual functional capacity assessment, the undersigned finds that the ALJ's reasons for the limitations assessed are fully supported by the medical evidence, objective test results, and by her credibility determination.  The ALJ's assessed RFC is supported by the record and free of legal error.

Plaintiff's argument is the same as that previously raised,

that the ALJ did not weigh the medical evidence in the way he would have wished. For the reasons articulated herein, the court finds that the ALJ's hypothetical included all of the limitations established by the medical and other competent evidence of record.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Based on the foregoing, the undersigned finds that the ALJ properly determined that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 13**) is **DENIED.**

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 19**) is **GRANTED.**

3.   The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file**.**

DATED February 6, 2007.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 23